Filed 1/6/23  In re K.D. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re K.D., a Person Coming Under the Juvenile Court Law. | |
| | D080817 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| | (Super. Ct. No. EJ4777) |
| Plaintiff and Respondent, | |
| v. | |
| D.D. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Conditionally reversed and remanded with directions.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant, Mother D.D.

Clare M. Lemon, under appointment by the Court of Appeal, for Defendant and Appellant, Father D.D.

Claudia G. Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Tahra Broderson, Deputy County Counsel for Plaintiff and Respondent.

## INTRODUCTION

Appellants D.D. (Mother) and D.D. (Father) appeal the juvenile court's jurisdictional and dispositional order declaring their minor son, K.D., a dependent and removing him from their custody. The sole issue is whether the San Diego County Health and Human Services Agency (the Agency) failed to comply with its inquiry requirements under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and Welfare and Institutions Code[1] section 224.2, and thus, substantial evidence does not support the juvenile court's finding that ICWA did not apply to K.D.'s juvenile dependency proceedings. The Agency concedes its initial inquiry under ICWA was deficient and failed to comply with Welfare and Institutions Code section 224.2, subidivision (b) and California Rules of Court, rule 5.481(a). The Agency further concedes, and we agree, that a limited remand is appropriate to ensure compliance with the inquiry provisions of ICWA. Therefore, we conditionally reverse the court's jurisdictional and dispositional orders.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

---

[1] All undesignated statutory references are to the Welfare and Institutions Code unless otherwise specified.

[2] We provide an abbreviated summary of the dependency proceedings and focus on the facts and background relevant to the narrow issue on appeal of the adequacy of the ICWA inquiry and findings.

In June 2022, the Agency detained minor K.D. and initiated dependency proceedings under section 300, subdivision (b), due to Mother's drug use and Father's failure to protect and supervise.

In a detention report, the Agency said it inquired regarding K.D.'s ICWA status. Father initially denied having any Native American heritage. But the paternal grandmother told the social worker that she had Cherokee ancestry through her mother and Blackfoot ancestry through her father, even though neither she nor her parents belonged to a tribe. Mother told the Agency that her grandmother was previously a tribal Blackfoot member, but that neither she nor K.D. is a member of a tribe. Based on this information, the social worker recommended the court to find that there is reason to believe that the child may be an Indian Child and to order the Agency to conduct further inquiry regarding the possible Indian status of the child.

An initial detention hearing was held on June 20 and June 21, 2022. Both parents submitted Parental Notification of Indian Status forms (ICWA-020). Father again denied any Indian ancestry. But Mother's form claimed that she, K.D., and one or more of her lineal ancestors were members of the Blackfoot tribe. Mother also claimed to be a resident or domiciled on a tribal trust land. The court ordered the Agency "to complete reasonable inquiry" regarding ICWA.

After the detention hearing, Father reported that his family comes from the Cherokee tribe, though he noted that no one had been enrolled yet. Father provided the names of the paternal grandparents, the paternal great-grandmother, and two other relatives. Two paternal uncles also reported possible Blackfeet ancestry. Mother also reported that Father's paternal family is Cherokee and that his maternal family is half Blackfoot.

For her side of the family, Mother reported that she has Blackfoot ancestry through a great-great-grandmother who may have been enrolled with the tribe. She provided names for a great-grandmother and her maternal grandmother, along with the maternal grandmother's date of birth. She also provided the name of her uncle who was in the process of registering them and was in contact with the tribe before he passed away in 2021.

Between July 1, 2022, and July 8, 2022, the social worker called several other family members about K.D.'s tribal ancestry, including two paternal uncles, the paternal grandmother, and a paternal step-uncle. One of K.D.'s paternal uncles reported Blackfoot and Cherokee ancestry, and he provided the dates of birth for K.D.'s paternal grandparents. K.D.'s paternal grandmother provided the date of birth for a paternal great-grandmother with Cherokee ancestry and reported that a great-grandfather had Blackfoot ancestry.

However, the appellate record shows that the social worker was aware of but did not speak with several other living family members before submitting a jurisdiction and disposition report on July 13, 2022. These family members included the paternal grandfather, the paternal great-grandfather, and the paternal great-grandmother, Mother's two siblings, the maternal grandmother, and three of Mother's uncles. Nevertheless, even without speaking with these family members, the Agency's jurisdiction and disposition report concluded that the "Indian Child Welfare Act does or may apply."

The Agency reported that it sent certified inquiries to the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee on July 5, 2022, and again on July 13, 2022, with "additional information." The appellate record contains undated letters

4

from the Agency to the Cherokee Nation of Oklahoma and the United Keetoowah Band of Cherokee, though the record does not have a copy of any letter sent to the Eastern Band of Cherokee Indians. The letters listed the names and dates of birth for K.D., both parents, the maternal grandmother, both paternal grandparents, and a paternal great-grandmother. The letters also listed the names, but no birthdates, of two maternal great-grandmothers (though Mother previously identified one as a great-great-grandmother), a "3rd maternal great-uncle," and a paternal great-grandfather. Each of these three tribes sent response letters, but none were able to establish tribal heritage for K.D.[3]

The Agency also reported that it sent a certified inquiries to the Blackfeet tribe on July 5, 2022, and again with "additional information" on July 13, 2022. However, the appellate record does not contain copies of these inquiries nor any inquiry responses from the Blackfeet tribe. The Agency subsequently reported that it called the Blackfeet tribe on August 2, 2022. According to the Agency, the tribe said that it "was out in July for a Tribal Holiday" and "would be out of the Office again Aug 11th-16th," but that "the tribe is now doing Inquiries/Notices for June 2022."

The record also does not contain a copy of the Notice of Child Custody Proceeding for Indian Child form (ICWA-030) that the Agency said it submitted on July 1, 2022, which was a week before the Agency obtained the birthdate for a paternal great-grandmother identified as having Cherokee ancestry. Nor is there any record that the Agency contacted the Bureau of

---

[3]    The Eastern Band of Cherokee Indians sent its response on July 12, 2022, which was a day before the Agency claims to have sent a supplemental letter with "additional information" to each of the identified tribes.

Indian Affairs (BIA) or the State Department of Social Services (SDSS) for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership.[4]

The court held a contested adjudication and disposition hearing on August 11, 2022. When the court asked about ICWA, the Agency said it still had "one outstanding letter or response from the Blackfeet tribe." Nevertheless, the Agency asserted: "[B]ased on the totality of the information in the record, including all the prior conversations with all of the relatives and our efforts to garner a response, we can find that there's no reason to believe at this point that there's an Indian child involved." The court agreed, stating, "[t]here's no reason to believe that the Indian Child Welfare Act applies; therefore, I'll find it does not apply at this point." However, the court noted that "if something changes in the future we'll recalendar this."

Mother and Father timely appealed the court's order following the August 11, 2022, hearing. After Mother and Father filed appeal briefs, the Agency filed a letter brief conceding that a limited reversal and remand is appropriate to ensure ICWA compliance.

APPLICABLE STANDARDS

---

[4] Father contends that the Agency erred by not contacting the BIA. The duty of further inquiry generally includes contacting both the BIA and SDSS for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership. (§ 224.2, subd. (e)(2)(B).) However, Mother and Father do not claim that the identity of the relevant tribes was unknown. Because notice to the BIA and SDSS is not required when the identity of the tribe is known, there is no need to decide in this appeal whether the absence of a notice to the BIA or SDSS constitutes error. (See *In re Karla C.* (2003) 113 Cal.App.4th 166, 175, fn. 5.)

ICWA provides: "In any involuntary proceeding in a State court, 'where the court knows or has reason to know that an Indian child is involved,' the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the pending proceedings and their right to intervene. (25 U.S.C. § 1912(a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 8.) California law also requires such notice. (§ 224.3, subd. (a) ["If the court [or] a social worker . . . knows or has reason to know . . . that an Indian child is involved, notice pursuant to [ICWA] shall be provided for hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement[.]"].)

The juvenile court and the Agency have an "affirmative and continuing duty to inquire" whether a dependent child "is or may be an Indian child" in all dependency proceedings. (§ 224.2, subd. (a).) California's statutory scheme contains "three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. ([*Id.*], subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required

7

if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].).'' (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*In re D.S.*).)

The Agency's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

After a "reason to believe" that an Indian child is involved has been established, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e).) The duty of further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the BIA and SDSS for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership; and (3) contacting tribes and anyone else that might have information regarding the child's membership or eligibility in a tribe. (*Id.*, subd. (e)(2).)

Pursuant to section 224.2, subdivision (e)(2)(C), the Agency must contact "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." The Agency's contact with the tribe "shall include

8

sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (*Ibid*.)

DISCUSSION

Mother and Father contend the Agency and the juvenile court failed to comply with the ICWA in failing to conduct adequate inquiry regarding whether there was "reason to know" the child was Indian under ICWA. A juvenile court finding that ICWA is inapplicable generally implies that the Agency has fulfilled its inquiry duty. (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].) We review ICWA findings for substantial evidence, but "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

A.   *The Agency's Inquiries with K.D.'s Family Members*

Mother and Father contend the Agency failed to ask maternal relatives it contacted as part of family finding efforts about the family's possible Native American heritage. They also contend the Agency erred by not attempting to interview the paternal grandfather, the paternal great-grandfather, and the paternal great-grandmother, particularly when the paternal grandmother reported the family's Cherokee and "Blackfoot" heritage came from the paternal great-grandparents.

The Agency concedes, and we accept, that it should have conducted ICWA inquiries with these family members. Mother's two siblings, the maternal grandmother, three of Mother's uncles, and the paternal grandfather are all "extended family members" as defined by section 1903 of

9

ICWA. Although the paternal great-grandfather and the paternal great-grandmother do not fall within ICWA's "extended family member" definition, they still are individuals "who have an interest in the child." (§ 224.2, subd. (b).). The Agency was aware of each of these family members' existence, so it should have asked them whether K.D. is, or may be, an Indian child. If for some reason it was not possible to contact these individuals, the Agency should have documented why it was unable to interview them. (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 745–746.) Because this information "appears to have been both readily available and potentially meaningful," the Agency failed to comply with its duty of inquiry. (*Id.* at p. 744.)

B. *The Information the Agency Provided to the Tribes*

Mother and Father also contend that the Agency erred by failing to provide the tribes with sufficient information to determine whether they considered K.B. an Indian child. Specifically, they argue that the Agency's inquiry letters to the tribe were devoid of important information contained in the jurisdictional and dispositional report, including: the fact that Mother believed a maternal great-great-grandmother was enrolled in the Blackfeet tribe; the year of a maternal great-grandmother's death; the middle names of two paternal grandparents; any information about a paternal great-grandmother; and the fact that a maternal uncle had been working with the Blackfeet tribe for 10 years to register family members with the tribe before his death in 2021.

All of this identifying and enrollment information was known to the Agency by the time it sent inquiry letters to the tribes. Section 224.3, subdivision (a)(5)(C), requires such information be conveyed to the tribes once the Agency has reason to know that an Indian child is involved. The Agency therefore erred by failing to provide this information.

10

## C. *The Timing of the Juvenile Court's Ruling*

Lastly, Mother and Father contend the juvenile court erred by failing to ensure the Agency had satisfied its duties of inquiry before finding ICWA did not apply. In addition to the Agency's deficiencies identified above, Mother and Father point to various documents missing from the record, including the ICWA-030 form the Agency said it submitted on July 1, 2022, and the inquiry letters the Agency said it sent to the Eastern Band of Cherokee Indians and the Blackfeet Tribe on July 5 and July 13, 2022.

"[W]ithout the [form ICWA-030] notice before the court, it had no evidence from which to conclude the notice was adequate. [¶] Notice under the ICWA must, of course, contain enough information to constitute meaningful notice." (*In re Karla C.* (2003) 113 Cal.App.4th 166, 175; see Cal. Rules of Court, rule 5.481(c)(1) [requiring *Notice of Child Custody Proceeding for Indian Child,* form ICWA-030, to be sent to Indian child's tribe].) "Without a review of the notices, the juvenile court is unable to determine whether they complied with the ICWA . . . and gave the Bureau or the tribe all known relevant information and a meaningful opportunity to determine whether the dependent child is an Indian child within the meaning of the ICWA." (*In re Karla C.*, at p. 178.) Accordingly, there was insufficient evidence in the record for the court to determine that the Agency had provided adequate notice to the tribes by the time of the August 11, 2022, hearing.

Mother and Father also emphasize the fact that the Agency was still awaiting an outstanding response from the Blackfeet Tribe by the time of the contested adjudication and disposition hearing on August 11, 2022. Both sides of K.D.'s family extensively reported Blackfeet ancestry. Even though the Agency disclosed the fact that it was still awaiting a response from the

Blackfeet Tribe, the court still agreed with the Agency's recommended finding that there was no reason to believe that ICWA applied. The court appeared to recognize the potential prejudice to such a ruling when it noted that it would "recalendar" the hearing "if something changes in the future" on the ICWA issues.

Because substantial evidence does not support the juvenile court's finding that ICWA did not apply, we conditionally reverse the dispositional orders as to K.D. with a limited remand for the Agency and the juvenile court to comply with ICWA and section 224.2.

### DISPOSITION

The findings and dispositional orders are conditionally reversed and the matter is remanded to the juvenile court with directions that, within 30 days of the remittitur, the Agency must file a report demonstrating its compliance with the initial inquiry provisions of section 224.2, subdivision (b), and, if required, conduct further inquiry under section 224.2, subdivision (e). Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine whether the Agency's investigation satisfied its affirmative duty to investigate. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to believe or to know that K.D. is an Indian child, the dispositional orders issued at the August 11, 2022, hearing shall be reinstated by the juvenile court. Alternatively, if after completing the inquiry the Agency or the juvenile court has reason to believe that K.D. is an Indian child, the court shall proceed

accordingly.  The clerk of this court shall issue the remittitur forthwith.  (Cal. Rules of Court, rule 8.272(c)(1).)

O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.